IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IMPACT APPLICATIONS, INC.,                 )
                                           )
            Plaintiff,                     )
                                           )        Civil Action No. _____
      vs.                                  )
                                           )
                                           )
CNS VITAL SIGNS AND PEARSON (US),          )
                                           )
            Defendants.                    )

**COMPLAINT FOR COPYRIGHT INFRINGEMENT, TRADEMARK
INFRINGEMENT, AND UNFAIR COMPETITION**

Plaintiff, ImPACT Applications, Inc. ("IMPACT"), by its counsel, Pietragallo Gordon

Alfano Bosick & Raspanti LLP, respectfully files this Complaint against Defendants, CNS Vital

Signs ("CNS") and Pearson (US) ("Pearson," and together with CNS, "Defendants").


I. **NATURE OF THE ACTION**

1.      This is an action for copyright infringement on the part of Defendants CNS and

Pearson in violation of the Copyright Act of the United States, as amended, 17 U.S.C. § 1 et seq.;

trademark infringement and other unfair competitive conduct in violation of the Lanham Act, 15

U.S.C. 1051 et seq; and Plaintiff's common law trademark and other rights.  Plaintiff seeks

preliminary and permanent injunctive relief as well as other equitable relief and compensatory

and punitive damages arising from Defendants' willful, unlawful, intentional, unfair, and

misleading conduct and unjust enrichment.

## II. **THE PARTIES**

2.      Plaintiff IMPACT is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business at 2000 Technology Drive, Suite 150, Pittsburgh, Pennsylvania, 15219.

3.      IMPACT's business operations include (i) the development and sale of software for neurocognitive testing, assessment, and evaluation for use in IMPACT's proprietary computerized neurocognitive evaluation system, and (ii) providing services associated with training for use of IMPACT's proprietary system (collectively referred to hereinafter as the "IMPACT Products and Services").

4.      IMPACT offers its IMPACT Products and Services throughout the United States and abroad.

5.      Plaintiff IMPACT is the exclusive owner of a number of federal copyright registrations that are used in connection with neurocognitive assessment tests exclusively developed by IMPACT and that are included in the IMPACT Products and Services developed and sold by IMPACT, including registrations for screen shots used in its IMPACT Products and Services (each an "IMPACT Screenshot" and collectively, the "IMPACT Screenshots"), brochures for the IMPACT Products and Services, demonstrations of the neurocognitive test, and reports that summarize the test results (collectively, the "IMPACT Materials").   Some of IMPACT's copyright registrations include the following:

| Title | Registration No. | Effective Date |
|---|---|---|
| ImPACT The Best Approach to Concussion Management Brochure | TX 7-326-900 ("the '900 Registration") | October 6, 2010 |
| ImPACT Immediate Post-Concussion | TX 7-195-280 | August 23, 2010 |

2

| Assessment and Cognitive Testing | ("the '280 Registration") | |
|---|---|---|
| ImPACT Software (screen shots) | TX 6-197-191<br>("the '191 Registration") | June 22, 2005 |
| ImPACT Short Demo | TX-u001790621<br>("the '621 Registration") | August 3, 2011 |
| ImPACT Applications – ImPACT Schools | TX 7-208-951<br>("the '951 Registration") | September 10, 2010 |
| ImPACT Test Military | TX 7-360-255<br>("the '255 Registration") | January 20, 2011 |
| ImPACT Test Professional | TX 7-360-253<br>("the '253 Registration") | January 20, 2011 |
| ImPACT Test Hockey | TX 7-360-251<br>("the '251 Registration") | January 20, 2011 |
| Records Management and Administration (Screen Shots) | TX 7-321-372<br>("the '372 Registration") | September 21, 2010 |
| ImPACT Clinical Report | TX 7-363-792<br>("the '792 Registration") | February 3, 2011 |

True and correct copies of these Certificates of Registration are attached hereto as Exhibit A.

6.     IMPACT is the owner of the following Pending and Registered Trademarks, referred to hereafter collectively as the **"IMPACT Marks"**:

| MARK | REG NO. / REG DATE or APPN. NO./ FILING DATE | GOODS / SERVICES | DATE OF FIRST USE IN INTERSTATE COMMERCE |
|---|---|---|---|
| IMPACT | 4,072,990 | Class 009- Computer software for neurocognitive testing, assessment and evaluation<br>Class 41 - Providing training, workshops, seminars and presentations for neurocognitive testing, assessment and evaluation | 06/2000 |

| | | | |
|---|---|---|---|
| IMPACT | 4,224,262 | <u>Class 042</u> - Providing temporary use of online non-downloadable computer software for neurocognitive testing, assessment and evaluation; computer software consulting | 08/15/2006 |
| IMPACT & Design  ImPACT | 4,072,991 | <u>Class 009</u> - Computer software for neurocognitive testing, assessment and evaluation<br><u>Class 041</u> - Providing training, workshops, seminars and presentations for neurocognitive testing, assessment and evaluation | 06/2000 |
| IMPACT & Design  ImPACT | 4,224,263 | <u>Class 42</u> - Providing temporary use of online non-downloadable computer software for neurocognitive testing, assessment and evaluation; computer software consulting | 08/15/2006 |

7.      True and correct copies of printouts from the United States Patent and Trademark Office ("USPTO") Web site that provide registration or application information for each of the **IMPACT Marks** are appended hereto as Exhibit B.

8.      The **IMPACT Marks** are all valid and subsisting.

9.      In addition to the IMPACT Marks, beginning in at least June 2000 and continuing now, Plaintiff IMPACT continuously has been creating and developing a significant IMPACT brand built around the "IMPACT" name by using a portfolio of IMPACT-related trademarks and service marks on and in connection with its brand of neurocognitive evaluation tools and services, examples of which are attached hereto as Exhibit C-E.

10.     Defendant CNS is, upon information and belief, an entity with a principal place of business at 598 Airport Boulevard, Suite 1400, Morrisville, North Carolina 27560.  Upon

4

information and belief, Defendant CNS is in the business of providing computerized neurocognitive testing tools and training materials that are used by providers within the neurological and psychological specialties to assist them in concussion management (the "CNS Vital Signs Products"). Upon further information and belief, Defendant's CNS Vital Signs Products and promotional materials associated therewith, including screenshots (the "CNS Screenshots") therein, contain copyrightable subject matter that was wholly original with Plaintiff IMPACT.

11. Upon further information and belief, Defendant CNS has adopted, used, and continues to use the IMPACT Marks and/or marks confusingly similar thereto in connection with its CNS Products.

12. Defendant Pearson is, upon information and belief, an entity with a principal place of business at One Lake Street, Upper Saddle River, New Jersey 07458. Upon information and belief, Defendant Pearson is in the business of education, business information and consumer publishing.

13. Upon further information and belief, since at least 2010, Defendant Pearson has been and continues to be an exclusive provider of the CNS Vital Sign Products.

14. Upon further information and belief, Defendant Pearson offers a variety of concussion webinar series, including webinars that promote the CNS Vital Signs Products (the "Pearson Webinars").

15. Upon further information and belief, the Pearson Webinars and screenshots used therein (the "Pearson Screenshots") include copyrightable subject matter that was wholly original with Plaintiff IMPACT.

16. Upon further information and belief, Defendant Pearson has adopted, used, and

5

continues to use the IMPACT Marks and/or marks confusingly similar thereto in the Pearson Webinars and Pearson Screenshots.

## III. JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. §§ 1114, 1116, 1121, 1125(a) and 28 U.S.C. §§ 1331 and 1338(a) in that this action arises under the Copyright Act, 17 U.S.C. § 101 et seq., and the Lanham Act, 15 U.S.C. § 1051 et seq.  This Court also has subject matter jurisdiction over the state and common law claims of trademark infringement and unfair competition averred herein pursuant to the provisions of 28 U.S.C. §§1338(b) and 1367 in that the claims are joined with a substantial and related claim under the Copyright Act, 17 U.S.C. §101 et seq., and the Lanham Act, 15 U.S.C. §1051 et seq. Defendants operate and conduct business in the Western District of Pennsylvania and are subject to personal jurisdiction in this Judicial District.

18.     Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391(b) and (c) because, upon information and belief, Defendants have and are conducting business and committed the acts of infringement complained of in this Judicial District.

## IV. FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### Copyright Infringement

19.     IMPACT applied to the Register of Copyrights for Certificates of Registration for the IMPACT Materials used in connection with the IMPACT Products and Services.  True and correct copies of the Certificates of Registration are attached hereto as Exhibit A.

20.     IMPACT's Web site clearly indicates that all content is copyrighted and that no

portion of the site may be copied or used without the written permission of IMPACT.

21.    The IMPACT Materials contain material wholly original with Plaintiff IMPACT that is copyrightable subject matter under the laws of the United States.  True and correct copies of examples of the IMPACT Materials are attached hereto as Exhibits C-E.

22.    Plaintiff IMPACT is currently and at all relevant times has been the sole proprietor of all rights, title, and interest in and to the copyright of the IMPACT Materials. IMPACT has produced and distributed the IMPACT Materials in strict conformity with the provisions of the Copyright Act of 1976 and all other laws governing copyright.

23.    Upon information and belief, CNS knowingly and willfully directly copied the IMPACT Materials for the specific purpose of infringing IMPACT's copyrights for the furtherance of its business objectives, specifically, selling its competing CNS Vital Signs Products.  The CNS Vital Signs Products include CNS Screenshots that contain copyrightable subject matter that was wholly original with Plaintiff IMPACT.  True and correct copies of examples of the CNS Screenshots are shown in Exhibit F, attached hereto.

24.    Upon information and belief, in or around July, 2010, CNS began offering for sale and selling its CNS Vital Signs Products using promotional materials that contain copyrightable subject matter that was wholly original with Plaintiff IMPACT.  True and correct examples of the promotional materials in which CNS promoted the CNS Vital Signs Products and offered the CNS Vital Signs Products for sale are attached hereto as Exhibit G.

25.    Upon information and belief, CNS licensed its CNS Vital Signs Products to Pearson and entered into an exclusive reseller or distribution agreement in or around 2010.

26.    Upon information and belief, in or around 2010, Pearson began to offer for sale and to sell the CNS Vital Signs Products and to offer the Pearson Webinars to promote the CNS

Vital Signs Products. Upon information and belief, the Pearson Webinars contain copyrightable subject matter that was wholly original with Plaintiff IMPACT. True and correct copies of examples of screenshots from the Pearson webinars are attached hereto as Exhibit F.

27.     As such, Defendants CNS and Pearson are attempting to pass off the IMPACT Products and Services and the IMPACT Materials associated therewith as their own.

28.     The natural, probable, and foreseeable result of Defendants' wrongful conduct has been to deprive IMPACT of goodwill and to injure IMPACT's relations with present and prospective clients.

29.     Defendants' wrongful conduct has deprived IMPACT of its right to prevent any intentional distortion, mutilation, or other modification of its work that would be prejudicial to its honor or reputation.

30.     IMPACT is informed and believes, and on that basis avers, that unless enjoined by this Court, Defendants intend to continue their course of conduct and to wrongfully use, infringe upon, and otherwise profit from the IMPACT Products and Services and the IMPACT Materials, and works derived from them.

31.     As a direct and proximate result of the acts of Defendants averred above, IMPACT has already suffered irreparable damage and has sustained lost profits.

32.     IMPACT has no adequate remedy at law to redress all of the injuries that Defendants have caused and intend to cause by their conduct.

33.     IMPACT will continue to suffer irreparable damage and sustain lost profits until Defendants' actions averred above are enjoined by this Court.

Trademarks and Unfair Competition

34.     Since as early as about 2000, IMPACT has been using the trademark "IMPACT" on and in connection with its IMPACT Products and Services, specifically its computer software and services associated with IMPACT's neurocognitive testing, assessment, and evaluation, that it manufactures, distributes, and sells to distinguish IMPACT's Products and Services from those made, sold, and offered by others. IMPACT filed an application for registration of the term "IMPACT" in International Classes 009 and 041 in the USPTO on November 5, 2010, and the IMPACT mark was registered in the USPTO Principal Register on December 20, 2011, as the '990 Mark. *See* Exhibit B.

35.     Since as early as about 2006, IMPACT has been using the trademark "IMPACT" on and in connection with its IMPACT Products and Services, specifically its non-downloadable computer software for IMPACT's neurocognitive testing, assessment, and evaluation, that it manufactures, distributes, and sells to distinguish IMPACT's Products and Services from those made, sold, and offered by others. IMPACT filed an application for registration of IMPACT in International Class 042 in the USPTO on August 15, 2011 and the IMPACT mark was registered in the USPTO Principal Register on December 20, 2011, as the '262 Mark. *See* Exhibit B.

36.     Since as early as about June, 2000, IMPACT has been using the trademark "IMPACT & Design" mark on and in connection with its IMPACT Products and Services, specifically its computer software and services associated with IMPACT's neurocognitive testing, assessment, and evaluation, that it manufactures, distributes, and sells to distinguish IMPACT's Products and Services from those made, sold, and offered by others.  IMPACT filed an application for registration of the term "IMPACT" in International Classes 009 and 041 in the USPTO on November 5, 2010, and the IMPACT & Design mark was registered in the USPTO

2489935.2

Principal Register on December 20, 2011, as the '991 Mark. *See* Exhibit B.

37.     Since as early as about August 15, 2006, IMPACT has been using the "IMPACT & Design" mark on and in connection with its IMPACT Products and Services, specifically its non-downloadable computer software for IMPACT's neurocognitive testing, assessment, and evaluation, that it manufactures, distributes, and sells to distinguish IMPACT's Products and Services from those made, sold, and offered by others. IMPACT filed an application for registration of IMPACT in International Class 042 in the USPTO on August 15, 2011 and the IMPACT & Design mark was registered in the USPTO Principal Register on October 16, 2012, as the '263 Mark. *See* Exhibit B.

38.     IMPACT brand products sold in connection with the IMPACT Marks have gained significant recognition in the minds of physicians, nurses, athletic directors and trainers, and neuropsychologists throughout the United States and abroad as strong indicators of quality neurocognitive evaluation tools and services by reason of the longstanding and continuous use of the IMPACT Marks and through extensive promotion and marketing of the IMPACT Marks through literature, marketing materials, trade shows, exhibits, magazine advertisements, direct sales calls, trade press, and other media, such as the World Wide Web.  As a result, the purchasing public has come to know, rely upon, and recognize the IMPACT Marks as indicating a source of high quality and reliable goods and services in the neurocognitive evaluation tool industry.

39.     IMPACT has continuously used the IMPACT Marks to identify the IMPACT Products and Services.

40.     Upon information and belief, the public has been given notice of the exclusive trademark rights in and to the IMPACT Marks by, for example prominently displaying the

2489935.2

registered trademark symbol "®" on the packaging, labels, literature, marketing materials, Web pages, and other advertising materials of the IMPACT Products and Services throughout the United States and abroad.

41.     The IMPACT Marks are owned exclusively by IMPACT.

42.     Upon further information and belief, since about 2010 to present, Defendant CNS has used and continues to use marks identical to or confusingly similar to the IMPACT Marks in connection with the sale and/or offers for sale of the CNS Vital Signs Products, but that are not or were not authorized or distributed by IMPACT, the owner of the IMPACT Marks.  True and correct copies of the marks used by CNS in connection with the sale and/or offer for sale of its CNS Vital Signs Products are shown in Exhibits F and G hereto.

43.     Since at least 2010, CNS's use of the IMPACT Marks (Exhibits F and G) has been and continues to be without authorization.

44.     Upon information and belief, CNS's use of the IMPACT Marks on and/or in connection with the CNS Vital Signs Products that CNS offers for sale is likely to confuse and has confused consumers or is likely to cause mistake or to deceive consumers to believe that the CNS Vital Signs Products are produced, sponsored, or approved by IMPACT or that CNS is affiliated or connected with IMPACT.

45.      Upon information and belief, the CNS Vital Signs Products are of a quality that is inferior to that of IMPACT's Products and Services that have been sold and are currently being sold by IMPACT in conjunction with the IMPACT Marks, all to IMPACT's detriment.

46.     Upon information and belief, since about 2010 to present, Defendant Pearson has used and continues to use marks identical to or confusingly similar to the IMPACT Marks in connection with the sale and/or offers for sale of the CNS Vital Signs Products, but are not or

2489935.2

were not authorized or distributed by IMPACT, the owner of the IMPACT Marks. An example of the marks used by Pearson in connection with the sale and/or offer for sale of its CNS Vital Signs Products is shown in Exhibit F hereto.

47.     Upon further information and belief, Pearson's use of the IMAPCT Marks has caused or is likely to cause consumer confusion.

48.     Upon information and belief, Pearson's use of the IMPACT Marks on and/or in connection with the CNS Vital Signs Products that Pearson offers for sale is likely to confuse and has confused consumers or is likely to cause mistake or to deceive consumers to believe that the Vital Signs Products are produced, sponsored, or approved by IMPACT or that Pearson is affiliated or connected with IMPACT.

49.     Upon information and belief, the Vital Signs Products offered for sale and/or sold by Pearson is of a quality that is inferior to that of the IMPACT Products and Services that have been sold and are currently being sold by IMPACT in conjunction with the IMPACT Marks, all to IMPACT's detriment.

50.     Upon further information and belief, since at least 2010, Defendant Pearson has used and continues to use the IMPACT Marks in the Pearson Webinars and the Pearson Screenshots without attribution to or authorization from IMPACT, the owner of the IMPACT Marks. *See* Exhibit F.

## COUNT I
## COPYRIGHT INFRINGEMENT PURSUANT TO 17 U.S.C. 501

51.     Plaintiff IMPACT incorporates by reference paragraphs 1 through 50 hereof as if the same were fully set forth herein.

52.     IMPACT is the owner of all exclusive and substantial rights and privileges in the

2489935.2

U.S. Copyright Registrations for the ImPact Materials.  True and correct copies of Copyright registration certificates are attached hereto as Exhibit A.

53.     Upon information and belief, Defendants had access to IMPACT's copyrighted material.

54.     Upon information and belief, Defendants copied IMPACT's copyrighted material and/or substantial portions of IMPACT's copyrighted material.

55.     Defendants' actions, as set forth above, constitute copyright infringement pursuant to 17 U.S.C. §101 *et seq.* and, in particular, 17 U.S.C. §501(a).

56.     Defendants' actions, as described above, directly infringe IMPACT's exclusive right to reproduce its copyrighted works pursuant to 17 U.S.C. §106(1).

57.     Defendants' actions, as described above, directly infringe IMPACT's exclusive right to prepare derivative works based on the copyrighted works pursuant to 17 U.S.C. §106(2).

58.     Defendants' actions, as described above, directly infringe IMPACT's exclusive right to distribute copies of its copyrighted works pursuant to 17 U.S.C. §106(3).

59.     Defendants' actions, as described above, directly infringe IMPACT's exclusive right to display the copyrighted works publicly pursuant to 17 U.S.C. §106(5).

60.     Defendants' infringements of IMPACT's copyrights have been committed willfully and for the purpose of private commercial gain.

61.     Defendants' infringing activities have damaged and will continue to damage IMPACT.

62.     IMPACT's remedy at law is inadequate and, upon information and belief, unless restrained by this Court, Defendants will continue to infringe IMPACT's copyrights.

63.     As a result of Defendants' infringing activities, IMPACT is entitled to injunctive

relief, damages, and its costs and reasonable attorneys' fees as set forth in 17 U.S.C. §§502, 503, 504 and 505.

## COUNT II
## TRADEMARK INFRINGEMENT PURSUANT TO 15 U.S.C. 1114

64.     Plaintiff IMPACT incorporates by reference paragraphs 1 through 63 hereof as if the same were fully set forth herein.

65.     The IMPACT Marks each are valid and subsisting and provide IMPACT with the exclusive right to use the IMPACT Marks in commerce in the United States, the Commonwealth of Pennsylvania, and this Judicial District.

66.     Defendants have infringed the IMPACT Marks in interstate commerce, in the Commonwealth of Pennsylvania, and within this Judicial District by various acts, including using in commerce reproductions, copies, or colorable imitations of the IMPACT Marks in connection with the sale, offering for sale, distribution, and/or advertising of neurocognitive evaluation products, all in violation of 15 U.S.C. § 1114(1)(a).

67.     Defendants have also infringed the IMPACT Marks in interstate commerce, in the Commonwealth of Pennsylvania, and within this Judicial District, by reproducing, copying, or colorably imitating the IMPACT Marks and applying such reproduction, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles, or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of neurocognitive evaluation products, all in violation of 15 U.S.C. § 1114(1)(b).

68.     Defendants' use of the IMPACT Marks is without permission or approval of IMPACT and such use by Defendant is likely to cause confusion, to cause mistake, and to deceive consumers as to the source of origin of the neurocognitive evaluation products.

2489935.2

69.     Consumers who purchase Defendants' neurocognitive evaluation products, including the CNS Vital Signs Products, that bear the IMPACT Marks, believing the neurocognitive evaluation products to be sponsored, associated with, or affiliated with IMPACT, are deceived and misled, thereby resulting in a loss of the goodwill in the IMPACT Marks and creating confusion, thus irreparably injuring IMPACT.

70.     Upon information and belief, Defendants' continued use of IMPACT Marks is with the deliberate intention of trading on and benefiting from the valuable reputation and goodwill established in the IMPACT Marks and gives the false impression that Defendants' products are associated with IMPACT.

71.     IMPACT has no control over the quality of the neurocognitive evaluation products offered and sold by Defendants and, because of the confusion as to the source and false association with IMPACT engendered by Defendants, IMPACT's valuable goodwill with respect to the IMPACT Marks is at the mercy of Defendants unless such use is preliminarily and permanently enjoined.

72.     Defendants' use of the IMPACT Marks is a deliberate, knowing, and willful infringement of IMPACT's statutory rights in the IMPACT Marks. Such acts have been undertaken in reckless and willful disregard for IMPACT's rights in the IMPACT Marks and have been designed specifically to trade upon the goodwill associated with the IMPACT Marks.

## COUNT III
## FALSE DESIGNATION OF ORIGIN PURSUANT TO 15 U.S.C. § 1125(a)

73.     Plaintiff IMPACT incorporates by reference paragraphs 1 through 72 hereof as if the same were fully set forth herein.

74.     Defendants' use of the IMPACT Marks in connection with selling its

15

neurocognitive evaluation products, including the CNS Vital Signs Products, creates the false designation of origin that such neurocognitive evaluation products emanate from IMPACT and falsely create the impression that IMPACT sponsors or approves of Defendants' products and falsely associates and affiliates Defendants with IMPACT in violation of 15 U.S.C. § 1125(a). The unauthorized use of the IMPACT Marks in such a manner is intentionally designed to deceive prospective purchasers into believing that the neurocognitive evaluation products sold by Defendants and bearing the IMPACT Marks are sold by, originate from, or are endorsed by IMPACT. Defendants' use of the IMPACT Marks is likely to deceive consumers into believing that Defendant is in some way associated with, connected with, or related to IMPACT. Such use is likely to harm the reputation and goodwill of IMPACT.

75.     IMPACT has no control over the quality of the neurocognitive evaluation products offered by Defendants. Defendants' reckless disregard for IMPACT's rights is harmful to the public and to the outstanding reputation of quality neurocognitive evaluation products associated with Plaintiff's IMPACT Marks.

76.     Defendants' acts complained of herein violate Section 43(a) of The Lanham Act, 15 U.S.C. § 1125(a), and have been undertaken in reckless and willful disregard for IMPACT's rights and designed specifically to trade upon the goodwill associated with the IMPACT Marks.

77.     Upon information and belief, Defendants have with knowledge of the falsity of the designations of origin, descriptions, and/or representations used in connection with the sale of neurocognitive evaluation products, caused them to be advertised, offered, and sold in interstate commerce to the immediate and irreparable damage of IMPACT and the public in violation of 15 U.S.C. § 1125(a).

## COUNT IV
### UNFAIR COMPETITION PURSUANT TO 54 Pa.C.S. § 1124

78.     Plaintiff IMPACT incorporates by reference paragraphs 1 through 77 hereof as if the same were fully set forth herein.

79.     By committing the acts herein alleged, including adoption of and use in commerce of the IMPACT Marks in connection with neurocognitive evaluation products, Defendants have unfairly appropriated the IMPACT Marks, and the reputation and goodwill associated therewith, and its actions in doing so constitute, among other things, unfair competition, infringement of registered and common law trademarks, deceptive advertising, unfair trade practices, and injury to IMPACT's reputation, all in violation of the common law and the laws of the Commonwealth of Pennsylvania, including at least 54 Pa.C.S. § 1124.

80.     Defendants' acts complained of herein have been carried out in bad faith with full knowledge of IMPACT's valuable rights in the IMPACT Marks.

81.     Defendants adopted the IMPACT Marks with malicious and reckless disregard of IMPACT's rights in and to the IMPACT Marks and with the willful intention to trade on IMPACT's reputation and goodwill. Exemplary and punitive damages are necessary by reason of Defendants' intentionally tortious conduct which has and will continue to cause damage to the rights of IMPACT in its IMPACT Marks and to the business reputation and goodwill of IMPACT, and are necessary to deter future similar conduct by Defendants.

## COUNT V
### COMMON LAW TRADEMARK INFRINGEMENT

82.     Plaintiff IMPACT incorporates by reference paragraphs 1 through 81 hereof as if the same were fully set forth herein.

2489935.2

83.     Defendants' acts as complained of herein have been intentionally undertaken in reckless and willful disregard for IMPACT's common law trademark rights and designed specifically to trade upon the goodwill associated with the IMPACT Marks in this judicial district.

84.     Unless and until enjoined by this Court, the acts of Defendants complained of herein will continue unabated, all to the continuing damage and detriment of IMPACT, for which IMPACT has no adequate remedy at law.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.     That the Court find that Defendants have infringed Plaintiff's copyright in Plaintiff's copyrighted material;

2.     That the Court find a substantial likelihood that Defendants will continue to infringe Plaintiff's copyrights in the copyrighted material unless enjoined from doing so;

3.     That the Defendants, their directors and officers, agents, servants, employees, and all other persons in active concert or privity or in participation with them be enjoined to remove Plaintiff's copyrighted material from the CNS Screenshots, the Pearson Screenshots, the Pearson Webinars, the CNS Vital Signs Product, and any other work owned or under the control of Defendants;

4.     That the Defendants, their directors and officers, agents, servants, employees, and all other persons in active concert or privity or in participation with them be enjoined from directly or indirectly infringing Plaintiff's copyright in Plaintiff's copyrighted material or continuing to market, offer, sell, dispose of, license, lease, transfer, display, advertise, reproduce,

18

develop, or manufacture any works derived or copied from the Plaintiff's copyrighted material or to participate or assist in any such activity and to remove the infringing derivative works from the CNS Screenshots, the Pearson Screenshots, the Pearson Webinars, the CNS Vital Signs Product, and any other work owned or under the control of Defendants;

5.     That Defendants, their directors and officers, agents, servants, employees and all other persons in active concert or privity or in participation with them be enjoined to destroy all promotional materials including brochures, pamphlets, and any similar marketing materials that contain copies or derivative works of Plaintiff's copyrighted material;

6.     That the Defendants be required to file with the Court and to serve onto Plaintiff, within thirty (30) days after service of this Court's order as herein prayed, a report in writing under oath setting forth in detail the manner and form in which the Defendants have complied with the Court's order;

7.     That the judgment be entered for Plaintiff and against Defendants for Plaintiffs actual damages according to proof, and for any profits attributable to infringement of Plaintiff's copyrights, in accordance with proof, or in the alternative that the judgment be entered in an amount provided as Statutory Damages pursuant to 17 U.S.C. § 504(c) of the Copyright Act;

8.     That the Defendants be required to account for all gains, profits, and advantages derived from its acts of infringement and for its own violations of laws;

9.     That the profits and advantages derived by the Defendants for its acts of infringement and other violations of law be deemed to be held in constructive trust for the benefit of the Plaintiff;

10.     That Plaintiff have judgment against Defendants for Plaintiff's costs and attorney's fees pursuant to 17 U.S.C. § 505 of the Copyright Act;

11.     That this Court grant a Permanent Injunction pursuant to 15 U.S.C. § 1116, enjoining and restraining Defendants and their agents, servants, employees, sales representatives, distributors, subsidiaries, heirs, successors and assigns, and all other persons acting by, through, or in active concert with any of them, from directly or indirectly using the IMPACT Marks, including any other marks, words, or names similar thereto which are likely to cause confusion, mistake, or to deceive;

12.     That this Court grant a Permanent Injunction pursuant to 15 U.S.C. § 1116, enjoining and restraining Defendants and their agents servants, employees, sales representatives, distributors, subsidiaries, heirs, successors and assigns, and all other persons acting by, through, or in active concert with any of them, from engaging in any course of conduct likely to cause confusion, deception, or mistake, or to injure Plaintiff's business reputation;

13.     That this Court order pursuant to 15 § 1118 that all products, labels, signs, prints, pamphlets, wrappers, receptacles, banners, advertisements, goods, and counterfeits or colorable imitations in the possession of Defendants and their agents, servants, employees, sales representatives, distributors, subsidiaries, heirs, successors and assigns, and all other persons acting by, through, or in active concert with any of them bearing the IMPACT Marks shall be delivered up and destroyed;

14.     That Defendants be required to account to and pay Plaintiff for any and all profits derived from the sale of neurocognitive evaluation products bearing the IMPACT Marks and for all damages sustained by Plaintiff by reason of said acts of infringement and unfair competition complained of herein and that said damages be trebled pursuant to 15 U.S.C. § 1117(b) and 54 Pa.C.S. § 1125(a) as a result of Defendants' willful violations of 15 U.S.C, § 1114(1)(a) and 54 Pa. C.S. § 1124;

15.     That the Court award punitive and exemplary damages against Defendants by reason of Defendants' intentional and willful conduct and in favor of Plaintiff;

16.     That costs of this action, together with reasonable attorneys' fees, be awarded to IMPACT pursuant to 15 U.S.C. § 1117(a); and

17.     That the Court grant such other and further relief as the Court deems just in the circumstances.

JURY TRIAL DEMANDED

Respectfully submitted

PIETRAGALLO GORDON ALFANO
  BOSICK & RASPANTI, LLP


By   /s/ Alicia M. Passerin
     Alicia M. Passerin
     PA I.D. 93558
     Eric G. Soller, Esquire
     PA I.D. No. 65560
     Jonathan C. Parks
     PA I.D. No. 78393

     One Oxford Centre, 38th Floor
     Pittsburgh, PA 15219
     Telephone:  412-263-2000
     Fax:  412-261-0915
     *Attorneys for Plaintiff*

Dated: April 22, 2013

21