IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| IMPACT APPLICATIONS, INC., | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 13-580 |
| | ) | |
| CNS VITAL SIGNS and PEARSON (US), | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

**REPORT**

### I. INTRODUCTION

Presently before the Court are Defendants', CNS Vital Signs' ("CNS") and Pearson's, respective Motions to Dismiss [ECF Nos. 20 and 22]. For the following reasons, it is respectfully recommended that Defendants' Motions be granted.

### II. BACKGROUND

IMPACT is a Pennsylvania corporation that is engaged in the business of developing and selling software for neurocognitive testing, assessment, and evaluation, specifically for the diagnosis and management of concussions. Compl. [ECF No. 1] at ¶ 3. IMPACT also provides services associated with training for the use of IMPACT's computer system. *Id*. Like Plaintiff, Defendant CNS Vital Signs is also in the business of "providing computerized neurocognitive testing tools and training materials that are used by providers within the neurological and psychological specialties to assist them in concussion management." *Id.* at ¶ 10. Defendant Pearson has been the exclusive marketer and distributor of the CNS Vital Signs Products since 2010. *Id*. at ¶ 13.

IMPACT owns federal copyright registrations

> used in connection with neurocognitive assessment tests exclusively developed by IMPACT and that are included in the IMPACT Products and Services developed and sold by IMPACT, including registrations for screen shots used in its IMPACT Products and Services . . . brochures for the IMPACT Products and Services, demonstrations of the neurocognitive test, and reports that summarize the test results.

*Id*. at ¶ 5.

Plaintiff claims that CNS's own promotional materials contain IMPACT trademarks "and/or marks confusingly similar thereto in connection with its CNS Products[,]" and contain "copyrightable subject matter that [is] wholly original with Plaintiff IMPACT." *Id.* at ¶¶ 10-11. Pearson offers a variety of concussion webinar series, including webinars that promote the CNS Vital Signs Products. *Id*. at ¶ 14. Plaintiff claims that Pearson, through webinars and screenshots used therein include "copyrightable subject matter that was wholly original" with Plaintiff IMPACT and Pearson has "adopted, used and continues to use the IMPACT Marks and/or marks confusingly similar thereto[.]" *Id*. at ¶¶ 15-16. Plaintiff attaches the registrations to the various copyrights and trademarks that it owns to its Complaint[1] along with the CNS "promotional materials" and IMPACTS own webinars.

IMPACT brings the following five claims against Defendants in connection with their alleged conduct: (1) copyright infringement pursuant to 17 U.S.C. § 501; (2) trademark infringement pursuant to 15 U.S.C. § 1114; (3) false designation of origin pursuant to 15 U.S.C. § 1125(a); (4) unfair competition pursuant to 54 Pa. Const. Stat. § 1124; and (5) a common law trademark infringement claim. *See id.* at 12, 14, 15, 17.

---

[1] Plaintiff owns the following registered copyrights: TX 7-326-900 ("the '900' Registration"); TX 7-195-280 ("the '280' Registration"); TX 6-197-191 ("the '191' Registration"); TX-u001790621 ("the '621' Registration"); TX 7-208-951 ("the '951' Registration"); TX 7-360-255 ("the '255' Registration"); TX 7-360-253("the '253' Registration"); TX 7-360-251 ("the '251' Registration"); TX 7-321-372 ("the '372' Registration"); TX 7-363-792 ("the '792' Registration"), and the following registered trademarks: 4,072,990; 4,224,262; 4,072,991; 4,224,263. See Compl. [ECF No. 1] at 2-4.

In support of its claim for copyright infringement, Plaintiff argues that "CNS knowingly and willfully directly copied the IMPACT Materials for the specific purpose of infringing IMPACT's copyrights for the furtherance of its business objectives, specifically, selling its competing CNS Vital Signs Products." *Id.* at ¶ 23. Plaintiff claims that Pearson offered "webinars" to promote the CNS Vital Signs Products. *Id.* at ¶¶ 26-27. Plaintiff claims that the Pearson webinars contain copyrightable subject matter that was wholly original with Plaintiff IMPACT, and that both CNS and Pearson are "attempting to pass off the IMPACT Products and Services and the IMPACT Materials associated therewith as their own." *Id.* at ¶ 27.

In connection with its trademark infringement claim, Plaintiff claims that:

> IMPACT brand products sold in connection with the IMPACT Marks have gained significant recognition in the minds of physicians, nurses, athletic directors and trainers, and neuropsychologists through the United States and abroad as strong indicators of quality neurocognitive evaluation tools and services by reason of the longstanding and continuous use of the IMPACT Marks and through extensive promotion and marketing of the IMPACT Marks through literature, marketing materials, trade shows, exhibits, magazine advertisements, direct sales calls, trade press, and other media such as the World Wide Web. As a result, the purchasing public has come to know, rely upon, and recognize the IMPACT Marks as indicating a source of high quality and reliable goods and services in the neurocognitive evaluation tool industry.

*Id*. at ¶ 38. Plaintiff claims that since 2010, CNS "has used and continues to use marks identical to or confusingly similar to the IMPACT Marks in connection with the sale and/or offers for sale of the CNS Vital Signs Products, but that are not or were not authorized or distributed by IMPACT[.]" *Id*. at ¶ 42. Plaintiff alleges that the use of its trademarks in connection with the CNS Vital Signs Products confuses consumers and deceives consumers into believing that "the CNS Vital Signs Products are produced, sponsored, or approved by IMPACT or that CNS is affiliated or connected with IMPACT." *Id*. at ¶ 44. Plaintiff also asserts that the CNS Vital Signs

3

products are of inferior quality than IMPACT's products and the use of IMPACT's marks by CNS and Pearson through its marketing and distribution of CNS products is to IMPACT's detriment. *Id*. at ¶¶ 45-49.

In response to the Complaint, each Defendant filed separate motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). As Plaintiff has filed responses to each motion, and Defendants have filed replies, this matter is presently ripe for disposition.

## III. JURISDICTION

The Court exercises its original jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a), as it arises under the federal Copyright Act, 17 U.S.C. § 101, *et seq*., and the Lanham Act, 15 U.S.C. § 1051, *et. seq*. The Court may also exercise its supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

## IV. STANDARD OF REVIEW

a. <u>Federal Rule of Civil Procedure 12(b)(6)</u>

To meet the standards of pleading pursuant to survive a Federal Rule of Civil Procedure 12(b)(6) motion, a complaint must include factual allegations that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint and in making this determination, a court must read the complaint in the light most favorable to the plaintiff and all factual allegations must be taken for their veracity. *Estelle v. Gamble*, 429 U.S. 97, 99 (1976). The court is to draw all reasonable inferences from the "well-pleaded" allegations contained in the complaint. *Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). In determining whether a plaintiff has met this standard, the reviewing court is to ignore legal conclusions unsupported by factual allegations, "[t]hreadbare recitals of the

elements of a cause of action supported by mere conclusory statements[,]" . . . "labels and conclusions[,]" and "naked assertions [that are] devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 677 (citations omitted). Thus, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). "This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556, n. 3).

A party "may supplement the complaint by adding exhibits such as public records and other indisputably authentic documents underlying the plaintiff's claims" and the Court may take these documents into consideration without converting a motion to dismiss into one for summary judgment. *Sentinel Trust Co. v. Universal Bonding Ins.*, 316 F.3d 213, 216 (3d Cir. 2003).

## V. ANALYSIS

### a. Copyright Infringement Pursuant to 17 U.S.C. § 501

CNS argues that Plaintiff's copyright claim should be dismissed because the Complaint is nothing more than a formulaic recitation of the elements of a copyright infringement claim. Specifically, CNS argues that the Complaint fails to specify "which of its copyrights were infringed; which portions of CNS's works contained copyrighted material; what copyrighted material was contained therein; or what the alleged similarities are between CNS's work and [Plaintiff's] copyrighted work." CNS Br. in Supp. of Mot. to Dis. [ECF No. 21] at 4. Moreover, CNS argues that Plaintiff's copyright infringement claim fails because the Complaint alleges no substantial similarity and upon reviewing the slide shows attached to the Complaint, the "materials contain **no original work of expression** that belongs to" Plaintiff. *Id*. at 5 (emphasis in

5

original). Further, CNS argues that to the extent that Plaintiff is claiming that CNS infringed upon its concussion test, it does not allege what portions of its tests CNS has copied and which portions of CNS's test contain Impact's copyrighted material. *Id*. at 6, 8.

Plaintiff responds that it has adequately pled its copyright infringement claim by alleging in the complaint:

> Plaintiff IMPACT is the exclusive owner of a number of federal copyright registrations that are used in connection with neurocognitive assessment tests exclusively developed by IMPACT and that are included in the IMPACT Products and Services developed and sold by IMPACT, including registrations for screen shots used in its IMPACT Products and Services . . . brochures for the IMPACT Products and Services, demonstrations of the neurocognitive tests, and reports that summarize the test results[.]
> . . .
> Defendant's CNS Vital Signs Products and promotional materials associated therewith, including screenshots . . . therein, contain copyrightable subject matter that was wholly original with Plaintiff IMPACT. . . .
> . . .
> CNS knowingly and willfully directly copied the IMPACT Materials for the specific purpose of infringing IMPACT's copyrights for the furtherance of its business objectives, specifically, selling its competing CNS Vital Signs Products. The CNS Vital Signs Products include CNS Screenshots that contain copyrightable subject matter that was wholly original with Plaintiff IMPACT.

Pl.'s Resp. in Op. to CNS Mot. to Dis. [ECF No. 24] at 6-7 (internal citations omitted). Further, Plaintiff argues that the Court should not make a determination on the "substantial similarity" factor because it should only be determined after a period of discovery. *Id*.

Defendant Pearson argues that Plaintiff's copyright infringement claim fails because upon a facial examination of the complaint and the exhibits attached thereto, the purported use of Plaintiff's copyrights constituted fair use because the copyrights were used for comparative advertising. Pearson Br. in Supp. of Mot. to Dis. [ECF No. 23] at 6. Plaintiff responds that "fair

6

use" is an affirmative defense that is not properly raised in a motion to dismiss. Pl.'s Resp. to Pearson Mot. to Dis. [ECF No. 30] at 2.

In general, to establish a cause of action for a claim of copyright infringement, the plaintiff must allege: (1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original. *Jackson v. Booker*, 465 Fed.App'x 163, 165 (3d Cir. 2012) (quoting *Feist Publications, Inc. v. Rural Telephone Serv., Co.*, 499 U.S. 340, 361 (1991)). Importantly, because "[n]ot all copying . . . is copyright infringement[,]" *Feist Publ'ns Inc.*, 499 U.S. at 361 a court must "still consider whether the copying is actionable, viewing the item through the lay person's eyes, focusing on whether the substantial similarities relate to protect[a]ble material." *Dam Things from Denmark v. Russ Berrie & Co., Inc.*, 290 F.3d 548, 562 (3d Cir. 2002). If plaintiff does not allege direct evidence of copying, it may do so "by demonstrating that the defendants had access to the copyrighted work and that the works are 'substantially similar.'" *Morgan v. Hannah Holdings, Inc.*, 635 F.Supp.2d 404, 413-14 (W.D.Pa. 2009) (quoting *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1223 (11th Cir. 2008)).

"Substantial similarity" is "comprised of two specific tests, both of which must be met. Under the first test, or the 'extrinsic' test, the fact-finder must determine if the two works are 'sufficiently similar to conclude that the alleged copier . . . copied from another work to make their [sic] own.' Under the second test, or the 'intrinsic' test, the fact-finder must determine 'whether a lay observer' would find the similarities to be the result of 'unlawful' or 'illicit' copying of another work." *Morgan v. Hannah Holdings, Inc.*, 635 F.Supp.2d 404, 414 (W.D.Pa. 2009) (internal quotations omitted).

In the instant case, while we agree with Plaintiff that any argument of "fair use" is not appropriately discussed at this point in the proceedings, the Court finds that the Complaint, when

7

stripped of its boilerplate legal conclusions, does not sufficiently state a claim for copyright infringement. The complaint does not allege which of Plaintiff's copyrights were allegedly infringed upon and how Defendants infringed upon it. Plaintiff merely lists its copyrights registrations which does not permit the Court to discern from the pleadings which "components of the [copyrighted works] are protected." *Tegg Corp. v. Beckstrom Elec. Co*., 2008 WL 2682603, at *8 (W.D.Pa. July 1, 2008). Furthermore, the Court cannot discern from the Complaint whether there are substantial similarities that relate to the protectable works or what "copyrightable subject matter" Defendants have allegedly infringed upon. Plaintiff argues in its responses to Defendants' Motions to Dismiss that Defendants have infringed upon their copyright to "source code." There is no mention of "source code" in the Complaint, which further illustrates that Plaintiff's Complaint is not buttressed by factual support. Therefore, it is respectfully recommended that Defendants' Motions to Dismiss be granted and Plaintiff's Complaint be dismissed without prejudice to amend to meet the pleading standards set forth in *Twombly/Iqbal* to the extent that amending would not be futile.

 b. *Trademark Infringement Pursuant to 15 U.S.C. § 1114*

As to Plaintiff's trademark infringement claim, both Defendants argue Plaintiff's Complaint is insufficient under Rule 12(b)(6) because it fails to allege a likelihood of confusion and because the use of the trademarks amounts to pure nominative fair use. Plaintiff responds that it has alleged sufficient factual assertions to show a likelihood of confusion. Specifically, Plaintiff argues that it alleges: "that Defendant 'has used and continues to use marks identical to or confusingly similar to the IMPACT Marks in connection with the sale and/or offers for sale of the CNS Vital Signs Products . . . . Thus, Plaintiff has pleaded factual information relative to the similarity of the marks. Pl.'s Resp. in Op. to CNS Mot. to Dis. [ECF No. 24] at 15-16. Second,

Plaintiff has alleged in the complaint that the IMPACT Marks have gained significant recognition in its field through consumers thus the Marks have strength in the market. *Id*. Third, Plaintiff alleges that "Defendant's continued use of IMPACT Marks is with the deliberate intention of trading on and benefiting from the valuable reputation and goodwill established in the IMPACT Marks and gives the false impression that Defendants' products are associated with IMPACT"; and that "[t]he unauthorized use of the IMPACT Marks in such a manner is intentionally designed to deceive prospective purchasers into believing that the neurocognitive evaluation products sold by Defendants and bearing the IMPACT Marks are sold by, originate from, or are endorsed by IMPACT." *Id*. at 15-16. Further, Plaintiff argues that "nominative fair use" is an affirmative defense not suitable for disposition at the motion to dismiss stage. *Id*.

The purpose of the Lanham Act, 15 U.S.C. § 1051, *et seq*., is to make unlawful "the 'deceptive and misleading use of marks' and 'to protect persons engaged in . . . commerce against unfair competition.'" *Two Pesos, Inc. v. Taco Cabana, Inc*., 505 U.S. 763, 767, 68 (1992) (quoting 15 U.S.C. § 1127). To state a claim for trademark infringement, the plaintiff must show: "(1) the mark is valid and legally protectable; (2) it owns the mark; and (3) the defendant's use of the mark is likely to create confusion concerning the origin of goods or services." *Delaware Valley Fin. Grp., Inc. v. Principal Life Ins. Co*., 640 F.Supp.2d 603, 619 (E.D.Pa. 2009) (citing *Urban Outfitters, Inc. v. BCBG Max Azria Grp., Inc*., 318 Fed.App'x 146, 148 (3d Cir. 2009)). If a "consumer viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark[,]" a likelihood of confusion exists. *Amerigas Propane, L.P. v. Opinion Corp.*, 2012 WL 2327788, at *3 (E.D.Pa. June 19, 2012) (quoting *A & H Sportswear, Inc. v. Victoria Secret Stores, Inc.*, 237 F.3d 198, 211 (3d Cir. 2000)). "When the goods involved in a trademark

infringement action directly compete with each other, a court 'need rarely look beyond the mark itself' to determine the likelihood of confusion." *A & H Sportswear, Inc.*, 237 F.3d at 211 (quoting *Interspace Corp. v. Lapp, Inc.*, 721 F.2d 460 (3d Cir. 1983)).

Although a court must accept all factual allegations in a complaint as true and view them in a light most favorable to Plaintiff, it is free to disregard threadbare recitals of the elements of a cause of action supported by mere conclusory statements, which is what Plaintiff's trademark infringement claim consists mostly of. Plaintiff's Complaint only asserts that "Defendants unlawfully harmed me," without supporting its assertions with factual explanations.

Defendants' argument that any purported use of Plaintiff's trademarks constituted nominative fair use, although quite legally tenable, is not appropriate at this juncture. While courts have applied the nominative fair use concept in cases similar to this one, such application was made after a period of some discovery. *See Century 21 Real Estate Corp. v. Lendingtree, Inc.*, 425 F.3d 211 (3d Cir. 2005); *A&H Sportswear, Inc.*, 237 F.3d at 210. At least one court has refused to apply the "nominative fair use" defense to dismiss a complaint pursuant to Rule 12(b)(6). *See Amerigas Propane, L.P.*, 2012 WL 2327788, at *9 ("In order to defeat Defendant's Motion to Dismiss, [plaintiff] must only establish that it has sufficiently stated a claim for relief, not that it is likely to succeed on the merits of its case. . . . While Plaintiff may face a tall task in demonstrating that Defendant's use of its mark is confusing, it is entitled to gather evidence to support this claim. The Court therefore denies Defendant's Motion to Dismiss on the basis that Plaintiff failed to allege likelihood of confusion.").

Thus, while Plaintiff may face a difficult task in rebutting a likelihood of confusion, it is nonetheless entitled to a period of discovery to support its claim. Therefore, although Plaintiff's trademark infringement claim fails to show an entitlement to relief, in the interest of justice, and

to the extent that amendment would not be futile, it is respectfully recommended that Defendants' Motions to Dismiss be granted and Plaintiff's Complaint be dismissed without prejudice to amend in accordance with the *Twombly/Iqbal* standards. Additionally, because Plaintiff's remaining state law claims are predicated by its federal trademark claim, it is also respectfully recommended that these claims also be dismissed without prejudice.

## VI. CONCLUSION

Because Plaintiff's complaint is devoid of factual assertions to support its claims for copyright and trademark infringement and its attendant state law claims, it is respectfully recommended that Defendants' Motions to Dismiss be granted and Plaintiff's complaint be dismissed without prejudice to amend consistent with the standards set forth in *Twombly/Iqbal*.

**RECOMMENDATION**

For the aforementioned reasons, it is respectfully recommended that Defendants' Motions to Dismiss [ECF Nos. 20 and 22] be granted and Plaintiff's complaint be dismissed without prejudice.

Parties who seek to challenge this Report and Recommendation must seek review by the District Judge by filing Objections by the date set forth in the docket entry. Failure to do so may waive the right to appeal. Any party opposing written objections shall have fourteen days after the service of the objections to respond thereto.

Dated: September 26, 2013

                                                Respectfully submitted,
                                                /s Robert C. Mitchell
                                                Robert C. Mitchell
                                                United States Magistrate Judge